**ROBERT L. ARLEO, ESQ. P.C.**
380 Lexington Avenue
17th Floor
New York, N.Y. 10168

Telephone: (212) 551-1115                                                                 Fax: (518) 751-1801
Email: robertarleo@gmail.com

April 8, 2018

Honorable I. Leo Glasser
Senior United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  Timoshenko v. Mullooly, Jeffrey, Rooney & Flynn, LLP
     <u>17-cv-04472 (ILG)(ST)</u>

Dear Senior District Judge Glasser:

   Please consider this correspondence as the Defendant's response to the Memorandum (Dkt. No. 16) submitted by Plaintiff's counsel, Igor Litvak, in response to the Order issued by Your Honor directing Mr. Litvak to show cause why Your Honor should not sanction him pursuant to Fed. R Civ. P. 11(b)(2) and why he should not be compelled to pay the Defendant's attorneys fees and costs pursuant to 28 U.S.C. § 1927. The alleged thrust behind the arguments set forth in the Memorandum are based upon the claim that Mr. Litvak was alleging a good faith argument in filing the Complaint and otherwise ignoring my warnings to him that the Complaint lacked any merit. For the reasons set forth below, Mr. Litvak's attempt to escape responsibility for baselessly harassing my client should be rejected.

   On page 2 of the Memorandum, Mr. Litvak purposely misstates the safe-harbor language approved in *Avila v. Riexinger & Associates, L.L.C.*, 817 F.3d 72 (2d Cir. 2016) by claiming that a debt collector must advise that a debt balance **<u>will</u>** increase over time. In fact, the safe-harbor language only requires that a debt collector advise that a debt balance *may* increase over time. It is a cold, hard fact that the proper, uncontradicted inclusion of the *Avila* safe-harbor language in a debt collection letter is all that is required for a debt collector to be insulated from claims of violation of *any* section of the FDCPA.

   On pages 3-5 of his Memorandum, Mr. Litvak cites to Second Circuit and New York district court cases and correctly asserts that Rule 11(b) requires a demonstration of subjective bad faith by an attorney, which is akin to a contempt of court, and that the claim advanced be entirely without color and asserted wantonly for purpose of harassment or delay. Rule 11(b)(2) sanctions are mandatory when a claim has absolutely no chance of success and there is no chance that the claim was creatively brought. The required subjective bad faith must be "frivolous-plus", with direct or circumstantial evidence that an attorney knew that the argument was without merit.

Rule 11 should not be applied to adventurous, though responsible, lawyering which advocates creative legal theories. By these correct arguments, Mr. Litvak cooks his own goose. Mr. Litvak's claims were in clear contempt of the safe-harbor mandate issued by the Second Circuit in *Avila*. Proper inclusion of the safe-harbor provision in a collection letter protects a debt collector against claims of violation of the FDCPA just as lead protects Superman from Kryptonite.

The FDCPA claims advanced by Mr. Litvak were entirely without color and were asserted for the purpose of harassing the Defendant into paying an unjustified "cost of defense" monetary settlement. Rule 11(b)(2) sanctions are mandatory in that the Defendant followed *Avila* to the tee, thus the allegations set forth in the Complaint had *absolutely no chance of success*. Importantly, there can be no argument that the claims advanced by Mr. Litvak were creatively brought. On the contrary, the claims advanced by Mr. Litvak are "frivolous-plus". The communications between Mr. Litvak constitute direct evidence that Mr. Litvak knew that the claims were baseless. Mr. Litvak's actions cannot be said to constitute adventurous, though responsible, lawyering which advocates creative legal theories. In contrast, Mr. Litvak knew that the Second Circuit provided absolute protection to debt collectors who set forth the *Avila* safe-harbor language in situations when a debt balance is increasing and no argument by Mr. Litvak could change this fact.

On page 6 of his Memorandum, Mr. Litvak cites to *Hunter v. Earthgrains Company Bakery*, 281 F.3d 144, 156-157 (4th Cir. 2002) wherein a sanctions order, based upon an argument which was contrary to Fourth Circuit Court of Appeals precedent, was reversed by the Fourth Circuit. However, the argument advanced by the therein sanctioned attorney, although contrary to Fourth Circuit precedent, was consistent with a majority of sister circuit courts and which was ultimately adopted by the Supreme Court. In contrast, there is no such federal circuit disagreement in conjunction with the safe-harbor language at issue. Also on page 6 of his Memorandum, Mr. Litvak (incredibly) cites to a series of cases concerning "novel" legal arguments and cases of first impression. Neither are at issue in conjunction with the above-entitled lawsuit thus these frivolous arguments should be promptly dismissed.

Your Honor correctly granted judgment on the pleadings to the Defendant based upon the fact that the collection letter sent to the Plaintiff set forth verbatim the "safe-harbor" language approved by the Second Circuit in *Avila*. Simply put, if a collection letter includes the *Avila* safe-harbor language where a debt balance is increasing due to interest and/or costs and/or other fees, and there is no other language in the letter which could be argued to contradict the safe-harbor language, then *Avila* renders it *mandatory* for a New York-Vermont-Connecticut federal district court to protect a debt collector from a frivolous lawsuit arguing that a debt collector was required to state more than the *Avila* safe-harbor language. It is as simple as that and Mr. Litvak, who has commenced many FDCPA lawsuits, frivolously argued to this Court that the *Avila* safe-harbor language is meaningless. On pages 7 through 11 of his Memorandum, Mr. Litvak cites to cases issued from courts outside the Second Circuit and, *yet again*, baselessly invokes the rulings issued in *Carlin v. Davidson Fink, L.L.P.*, 852 F.3d 207 (2d Cir. 2017) and *Balke v. Alliance One Receivables Mgmt.*, 2017 U.S. Dist. LEXIS 94032 (E.D.N.Y.).

Mr. Litvak's supposed reliance upon *Carlin* and *Balke* demonstrates an unreasonable and intentional ignorance of fact by an attorney actively involved in filing FDCPA lawsuits. The letter in *Carlin* set forth a "Total Amount Due" as a dollar figure, but added that such amount "may include estimated fees, costs additional payments and/or escrow disbursements…. which are not yet due." The letter further advised the consumer that, if he paid the total amount specified to be due by a certain date, he would get a refund of any charges and fees that had not been incurred as of the time of payment. The Second Circuit held that, because the initial notice did not specify what the estimated fees, costs, and additional payments are, the least sophisticated consumer would not be able to determine from the actual notice how any additional fees are calculated, whether they may be disputed, or what provision of the note gives rise to the fees. The Second Circuit concluded that this language effectively told the consumer that he would have to pay the amount demanded and wait to see whether a refund would be issued to determine how much he actually owed. As *no such confusing representations are set forth in the Defendant's stark, bland and basic collection letter*, there could be no subjective good faith reliance by Mr. Litvak upon *Carlin* in conjunction with the Defendant's collection letter.

Importantly, the Second Circuit in *Carlin* affirmed the safe-harbor language approved in *Avila.* Had the Second Circuit wanted to modify the safe-harbor language, it could have done so. Thus, as the Defendant's letter includes the exact *Avila* safe-harbor language, and, importantly, does not include any additional assertions which could contradict the safe-harbor language, Mr. Litvak's feigned reliance upon *Carlin* only serves to demonstrate his subjective bad faith. A similar result occurs with the *Balke* decision. The collection letter at issue therein sets forth "As of this letter, you owe $2110.96. Your account may be periodically increased due to the addition of accrued interest or other charges if so provided in your agreement with your original creditor." Although Mr. Litvak asserts that this statement constitutes an *Avila* safe harbor advisement, his assertion is frivolous. The statement in the *Balke* letter is incomplete as it fails to also advise a consumer "Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will contact you before depositing the check for collection." In addition, and contrary to the Defendant's letter, there is no contact person set forth in the *Balke* letter. Thus, the *Balke* letter omits that portion of the *Avila* safe-harbor language which protects against the potential harm with which the Second Circuit was concerned: a consumer paying an amount in a collection letter at any time and mistakenly believing that he had paid the debt in full when, in fact, additional monies were owed based upon additional interest, costs and/or other fees which had accrued between the date of the letter and the debt that payment of the amount set forth in the letter was tendered. Thus, the lack of the *complete Avila* safe-harbor language renders the *Balke* letter materially different from the Defendant's letter for *Avila* purposes. Mr. Litvak was well aware of this fact yet his feigned good faith reliance upon *Balke* is further evidence of his subjective bad faith.

Commencing on page 12 of his Memorandum, Mr. Litvak argues that he should not be sanctioned pursuant to 28 U.S.C. § 1927. Therein he correctly asserts that, in order to sanction an attorney under Section 1927, a court must find clear evidence that a party's claims were entirely without color and were brought in bad faith with the intent to harass or delay. Bad faith can be

inferred when the attorney's actions are so completely without merit as to require the conclusion that the actions must have been undertaken for same improper purpose. Section 1927 must be construed narrowly so as not to stifle zealous advocacy. The reasoning set forth above also demonstrates why Your Honor *should* sanction Mr. Litvak under Section 1927 thus said reasons need not be reiterated herein.

In a futile attempt to convince Your Honor that Section 1927 sanctions would not be proper, Mr. Litvak, on page 13 of his Memorandum, cites to the case of *Bukhbinoler v. Stoneleigh Recovery Assoc., LLC*, 2018 U.S. Dist. LEXIS 15084 at *10-11 (E.D.N.Y.). Therein, a request for Section 1927 sanctions against Mr. Litvak was denied. However, *and once again*, the collection letter at issue therein did not include the *Avila* safe-harbor language. In fact, the entire FDCPA issue therein was different based upon the fact that the Complaint alleged an FDCPA violation for the failure to advise that interest, costs and/or fees were *not* accruing. Prior to March 29, 2018, the issue as to whether the *Avila* decision required a debt collector to advise that a debt balance was not increasing due to interest, costs and/or other fees was the subject of FDCPA litigation. However, the Second Circuit answered this question in the negative. *Taylor v. Fin. Recovery Servs.*, 2018 U.S. App. LEXIS 7898 (2d Cir. March 29, 2018). Thus, the *Bukhbinoler* decision does nothing to assist Mr. Litvak in his attempt to escape his dire quagmire.

Mr. Litvak's *modus operandi* in the herein lawsuit is demonstrated by a written communication he sent to the defense counsel in the *Bukhbinoler* lawsuit:

> "[w]e will not be dismissing this case. One way or another I am going to the Second Circuit on this issue. So far everyone has settled but if your client does not have an offer then they will be the lucky one."

2018 U.S. Dist. LEXIS 15084 at *8. This highly arrogant and threatening email is demonstrative of Mr. Litvak's exploitation of the known high costs of defending an FDCPA lawsuit, which is what he was relying on in conjunction with the herein baseless lawsuit. Otherwise, Mr. Litvak voluntarily dismissed the *Bukhbinoler* lawsuit after receiving a Rule 11 notice from counsel for the defendant named therein. Mr. Litvak should have done the same in regard to the Complaint he filed in the herein lawsuit.

The Defendant's collection letter was not the result of language *voluntarily selected* by the Defendant. Instead, the letter is the product of a debt collector relying upon language the Second Circuit stated would hold debt collectors safe and harmless from FDCPA lawsuits so long as the language was not contradicted by other assertions in the letter. Thus, under no circumstances could the Defendant have been found liable for violating the FDCPA and Mr. Litvak knew it. It is also important to note that Mr. Litvak conveniently ignores the excellent safe-harbor rational set forth at the end of Your Honor's decision granting judgment on the pleadings to the Defendant. To find that the Defendant violated the FDCPA would have rendered the sound reasoning for safe-harbor advisements to debt collectors, as explained by Your Honor, meaningless.

On page 14 of his Memorandum. Mr. Litvak asks the Court to reject the Defendant's request to also hold his co-counsel, Daniel Cohen, liable to the Defendant under the inherent power of a federal court to sanction attorneys for improper litigation conduct. Mr. Litvak argues that Mr. Cohen did not sign any of the papers filed by Mr. Litvak but admits that Mr. Cohen filed his notice of appearance after the Defendant filed its motion for judgment on the pleadings. As argued in my letter dated April 1, 2018 to Your Honor (Dkt. No. 14), Mr. Cohen is deemed charged with knowledge of the arguments set forth in the Defendant's motion for judgment on the pleadings and the frivolous allegations set forth in the Complaint and in the Plaintiff's opposition to the Defendant's motion. Thus, Mr. Cohen should also be sanctioned pursuant to the Court's broad inherent power.

In sum, the Defendant followed the rules *to their detriment* because Mr. Litvak and Mr. Cohen broke the rules. Both must be held accountable.

Respectfully submitted,

/ s / *Robert L. Arleo*

Robert L. Arleo

RLA:gra
cc: All attorneys of records via ECF
    Mullooly, Jeffrey, Rooney & Flynn, LLP