1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2
   ------------------------------x
3                                       17-CV-4472(ILG)
   OKSANAN TIMOSHENKO,
4                                       United States Courthouse
           Plaintiff,                   Brooklyn, New York
5
           – versus –                   May 04, 2018
6                                       12:00 p.m.
   MULLOOLY, JEFFERSON,
7  ROONEY & FLYNN LLP
           Defendants.
8
   ------------------------------x
9
         TRANSCRIPT OF CIVIL CAUSE FOR ORDER TO SHOW CAUSE
10              BEFORE THE HONORABLE I. LEO GLASSER
              UNITED STATES SENIOR DISTRICT JUDGE
11

12  APPEARANCES

13  Attorney for Plaintiff:  Law Office of Igor Litvak
                             1701 Avenue P
14                           Brooklyn, New York 11229
                             BY:  IGOR LITVAK, ESQ.
15

16  Attorney for Defendant:  BY:  ROBERT L. ARLEO, ESQ.
                             380 Lexington Avenue
17                           New York, New York 10168

18
   Court Reporter:           RIVKA TEICH CSR, RPR, RMR
19                           Phone:  718-613-2268
                             Email:  RivkaTeich@gmail.com
20
   Proceedings recorded by mechanical stenography.  Transcript
21  produced by computer-aided transcription.

22

23

24

25

PROCEEDINGS

1    (In open court.)

2    THE COURTROOM DEPUTY:  All Rise.  Order to show

3 cause, Timoshenko versus Mullooly and Flynn.

4    Counsel, come forward state your appearances for the

5 record.

6    MR. LITVAK:  Igor Litvak on behalf of Timoshenko.

7 Good afternoon, your Honor.

8    MR. ARLEO:  Good afternoon, your Honor, Robert

9 Arleo, counsel for Mullooly Jefferson.

10    THE COURT:  Did you say your name was Litvak?

11    MR. LITVAK:  Igor Litvak.

12    THE COURT:  Do you want to be heard?

13    MR. LITVAK:  Yes, your Honor.  The gist of my order

14 to show cause, your Honor, is the fact that when I filed that

15 complaint, and when I litigated the motion to dismiss, I was

16 relying on Balke.  In Balke the Court relied on Carlin and on

17 Avila.  Specifically stated that even though the letter in

18 that case had a safe harbor language, without any clarifying

19 reason as to why, the Court in that case found there to be a

20 violation.  Basically, it said that it was not enough to say

21 that the balance may increase or will increase.  You have to

22 say exactly -- you have to give details as how much it will

23 increase and other things like that.

24    Therefore, when I saw the letter at issue in our

25 case, where the language was similar, and I looked at that

1    letter, and I basically thought to myself, this is an

2    opportunity to expand or to modify or distinguish the Second

3    Circuit precedent; and that's what we did.

4          There definitely has not been a subjective bad faith

5    on my part, whatsoever, in filing that case.  I think relying

6    on Balke it's clear that there was a claim made with some

7    color.  Now, the Court is willing -- is free to disagree with

8    that assessment, and I have been wrong on the law, but that

9    doesn't rise to the level of bad faith, frivolous cause.

10          This is what the motion practice is all about.  You

11   debate the law.  And you get a decision.  You move on.

12          There was definitely no bad faith, your Honor,

13   whatsoever.

14          Again, other judges that -- actually there was a

15   recent decision from Judge Cogan, which had a similar issue in

16   that case.  I have the decision, I can give it to you.  And

17   although the judge dismissed the complaint, Judge Cogan

18   dismissed the complaint, the judge did not issue any sanctions

19   whatsoever.

20          Again, in your decision, as I mention in my order to

21   show cause, you made two findings.  The first finding, in

22   Carlin the issue was the G, 692(G); Avila concerns 692(E), as

23   I mentioned in my order to show cause.  The analysis has been

24   the same as to G and as to E.  There is multiple courts, even

25   Balke, found there to be a G violation and E violation.

1   Courts in other circuits, other districts, have found, have

2   stated that analysis for the purposes of, for the purpose of

3   legal analysis, G and E is the same.

4           Furthermore, your Honor, in your order you mentioned

5   that there was no safe harbor disclosure in Balke.  Actually

6   there was, there was a safe harbor disclosure on Balke.  You

7   don't have to have a specific language to have a safe harbor

8   disclosure.

9           The point is, that letter specifically stated, your

10  balance may increase.  The Court in that case still found

11  there to be a violation.

12          So therefore, relying on Balke, your Honor, I don't

13  believe the Court could say there was suggestive bad faith,

14  frivolous cause.

15          I think it was reasonable to rely on Balke.  And

16  Balke relied on Avila and on Carlin.  So because of that, it

17  was reasonable for me to do that as well.

18          Now the Balke court did not actually go into much

19  detail to explain why they found it to be not enough; they

20  just said it was not enough.  So therefore, we went with that

21  argument.  We tried to expand the law, to modify the law.  It

22  has never been found to be sanctionable to overturn the

23  precedent.  That's what law is about, that's what motion

24  practice is about.

25          FDCPA doesn't know anything about the FDCPA, that's

1    how these cases come out.  Attorneys try to modify it somehow.

2    They argue.  They come out with these novel theories.

3          Last, this is more true in every CPA litigation.

4    Because when the comes to that debt collectors, nobody

5    regulates them.  The FDCPA attorneys, they are under the

6    Attorney Generals when it comes to that field.  So therefore,

7    we have to go a step, sometimes a step beyond, and come up

8    with creative legal arguments in order to regulate the

9    industry.

10         Therefore, your Honor, I think for those reasons the

11   Court should not order any sanctions whatsoever in order to

12   refuse.

13         MR. ARLEO:  Good afternoon, your Honor, I've heard

14   Mr. Litvak.  And initially, I'm not a solely FDCPA defense

15   lawyer.  As your Honor may recall, I did plaintiff consumer

16   work, I represent both.

17         Here you have the Second Circuit telling debt

18   collectors, if you use this language you'll be safe and

19   protected.

20         The Carlin decision has nothing to do with this

21   case.  The Carlin decision was a clearly different letter.

22   The amount of the debt was very confusing, it may include past

23   things, it may not include.  It's totally irrelevant to this.

24         The Balke letter did not have the full Avila letter,

25   which more importantly the Balke letter left off that portion

1   of the safe harbor language that said, the day you pay might

2   be different, please write us or call us.  So here that letter

3   was clearly distinguishable.

4           There is nothing Mr. Litvak can say here that is

5   going to look at this and say you sued my client for doing

6   what the Second Circuit told them to do.

7           As far as modifying, reversing, arguing against,

8   what good is a safe harbor language if a debt collector,

9   hard-working, honest lawyers -- who I can tell, your Honor,

10  Mr. Mullooly is here today.  I've known him for 20 years.  He

11  retains me to make sure his letters are in compliance.  He's

12  not the type of collection agency that Congress was looking to

13  corral.

14          And what I did with Mr. Litvak was instead of filing

15  a motion to dismiss or sending him a Rule 11 letter, I don't

16  want to do that, I just pointed out, you're wrong, here is why

17  you're wrong.

18          I think your Honor was very correct when you put in

19  the decision, this is about cost of defense settlements.  This

20  is about filing multiple FDCPA lawsuits.  That Avila decision

21  alone put the Eastern District of New York until recently

22  number one in FDCPA filings.

23          The other thing I don't understand, your Honor, how

24  come there is never any pre-communication with the collection

25  agency to say, here is what I think is wrong with your letter,

1  before filing the lawsuit.  They don't do that.  I do that.

2            You just file a lawsuit.  What does that entail,

3  your Honor, that entails insurance coverage, that entails

4  liability, that entails explanations to creditors.

5            What the defendant did here was exactly what the

6  Second Circuit said they could do to avoid liability.

7  Mr. Litvak didn't respect that.  And very convincingly, your

8  Honor, they had the chance to change Avila in the Carlin case

9  if they wanted to.  They could have and they didn't.

10           Where does of leave debt collectors?  Where does it

11  leave them because it's a punching bag, it's a whack-a-mole.

12  Now I got you, now I got you again, because I'm allegedly

13  arguing.

14           Here there is clearly no basis for this lawsuit.  I

15  agree with your Honor's decision.

16           MR. LITVAK:  Your Honor, can I just respond real

17  quick.  The Court in Avila did not say you can use any

18  language.  The purpose of Avila is to advise the debtor that

19  the balance may or will increase.  This is what happened in

20  the Balke letter.  The Balke letter stated your balance may

21  increase, that's the safe harbor language.  You don't have to

22  use a specific language.

23           The letter stated the balance may increase.  The

24  Court in that case, even though the letter stated the balance

25  may increase, and that's the safe harbor language, the Court

PROCEEDINGS

1  still stated that was not enough.  The Court stated, you have

2  to provide more than that, that's not enough.

3      So looking at the Balke decision, the Balke decision

4  which relied on Carlin and Avila, looking at that decision you

5  can say, I can modify, I can change the Second Circuit

6  precedent.  That's fine.  That's done all the time.  That's

7  not an issue.  That's never been found to be sanctionable.

8      So therefore, the Court should not issue any

9  sanctions whatsoever on this case, or for me to pay attorney

10  fees.  That's what motion practice is about.

11      Furthermore, Carlin had to do with G, and our case

12  had to be with E, but multiple Courts have found that to be

13  okay, that the analysis is still the same.  Even the Balke

14  Court stated that.  They found there to be a violation on the

15  G analysis and on the E analysis.

16      Now I have no idea what kind of collection agency

17  Mr. Arleo represents, but FDCPA, all agencies --

18      MR. ARLEO:  One that follows the law --

19      THE COURT:  Excuse me.

20      MR. LITVAK:  -- applies to all collection agencies,

21  the good and the bad.

22      I understand that he sent me the e-mail.  I looked

23  at that e-mail.  We disagreed.  I cannot dismiss a case

24  because I get an e-mail from opposing counsel.  I looked at

25  his e-mail.  I looked at the Balke decision.  And I told him I

PROCEEDINGS

1    disagree with you on that.  That's it.  We disagree with you

2    on the Balke decision.  So therefore, I did not believe that I

3    had to dismiss that case.

4         Now, my partner I think mentioned in one of the

5    letters that there have been other occasions where

6    Mr. Arleo --

7         THE COURT:  Your partner is who, Mr. Cohen?

8         MR. LITVAK:  Cohen and other attorneys I know.

9    They've been --

10        THE COURT:  Excuse me, is your partner Mr. Cohen?

11        MR. LITVAK:  Colleague.

12        THE COURT:  I'm asking you a very simple question.

13        MR. LITVAK:  Partner in the legal sense, no.

14   Somebody I work with on some cases here and there, not in a

15   legal sense.

16        THE COURT:  Mr. Cohen noted his appearance in this

17   case, didn't he?

18        MR. LITVAK:  Yes, he did notice his appearance in

19   this case.

20        THE COURT:  He noticed his appearance after he was

21   aware of the correspondence between you and Mr. Arleo.  He was

22   aware of that correspondence, he knew of the letter that

23   Mr. Arleo sent?

24        MR. LITVAK:  To the best of my knowledge, as far as

25   I remember, he was aware of the correspondence, correct.

PROCEEDINGS

1           THE COURT:  He was.

2           MR. LITVAK:  That e-mail that went back and forth,

3     as far as I remember, he was aware about that correspondence.

4           THE COURT:  And what was the purpose for Mr. Cohen's

5     notice of appearance?  Was he assisting you in connection with

6     this case?

7           MR. LITVAK:  Well, he just started practicing in the

8     FDCPA field.  He doesn't have that much experience in the

9     FDCPA field.  So he's looking to get experience, he would like

10    to become a consumer lawyer.  So he joined me on this case to

11    litigate this case.

12          But the point I was trying to make is that there

13    were other times where we did dismiss cases.  Where Robert

14    Arleo or other attorneys would e-mail us, would point

15    something out, and we'll look at the issue and if we believe

16    that opposing counsel is correct, we will dismiss the case.

17    We have done it in the past.  If I agreed with opposing

18    counsel in this case, I would have done the same, but I

19    couldn't.

20          Looking at the Balke decision, I reasonably thought

21    that I had a good legal argument.  Now I may have been wrong

22    on the law or on the facts.  But again, any doubt when it

23    comes to sanctions that the Court wants to issue sua sponte,

24    any doubt has to be resolved in favor of the drafter.

25          I'm affirming to this Court based on Balke I

1  reasonably thought -- I might have been wrong -- but I

2  reasonably thought I had a good legal argument.

3        I understand the Court did not agree with me in its

4  decision.  I respect that.  That doesn't rise to the level

5  where the Court needs to issue sanctions or make me pay

6  opposing attorney's fees.

7        THE COURT:  Mr. Litvak, if I understand you

8  correctly, before I get into some other things, if I

9  understand you correctly, it was your belief that Balke was

10 correctly decided notwithstanding the fact that Avila would

11 have compelled another conclusion; is that correct?

12       MR. LITVAK:  I thought that --

13       THE COURT:  Excuse me, Mr. Litvak, I would

14 appreciate it if you would listen to my question and try and

15 answer it.  If it can't be answered yes or no, you can make

16 whatever additions you wish to make a little later.

17       But if I understand you correctly, you believed that

18 Balke was correctly decided notwithstanding that Balke

19 differed from Avila?

20       MR. LITVAK:  Correct.  I thought that the Balke was

21 distinguishing it from Avila.  And I thought that Balke --

22       THE COURT:  No, it wasn't distinguishing it.  You

23 thought that Balke, although it did not comply with the

24 language of Avila, was nevertheless correctly decided.

25       MR. LITVAK:  Yes.  I thought that the Court in Balke

1    was trying to extend Avila.  Avila said you have to provide

2    this disclosure that the balance may increase.  I thought that

3    Balke went a step further and now was requiring the debt

4    collectors not just to state that they may increase, but also

5    requiring debt collectors to state to provide more details by

6    how much, what is the interest rate.

7            THE COURT:  Mr. Litvak, the answer to the question

8    that I've asked is, you believed that although Balke was

9    contradictory to and did not comply with Avila, Balke was in

10   some respect extending Avila, yes?

11           MR. LITVAK:  Extending or trying to modify the Avila

12   decision, correct.

13           THE COURT:  The Court of Appeals or authority in

14   Avila still is correct, is still the law in the Circuit at the

15   time Balke was decided.  So what you're saying, in effect, is

16   Balke was incorrectly decided by the District Court, I think

17   it was Judge Spatt.

18           MR. ARLEO:  Magistrate Judge Tomlinson.

19           THE COURT:  Let me just see if I understand what

20   this is about.  Mr. Timoshenko got a letter.  By the way, what

21   was the debt that Mr. Timoshenko incurred, he bought

22   something?

23           MR. LITVAK:  I'm not sure exactly what was the debt

24   for.

25           THE COURT:  You don't know what he owed the money

PROCEEDINGS

1   for?

2           MR. LITVAK:  No, I don't know, your Honor.

3           MR. ARLEO:  I believe it was Bank of America credit.

4           MR. LITVAK:  It's usually credit card.

5           THE COURT:  It didn't make any difference whether

6   it's a credit card for the purpose of the question I'm asking.

7   The fact of the matter is, Mr. Timoshenko bought something and

8   as a result of buying something he owed the merchant a sum of

9   money.

10          MR. LITVAK:  Correct.

11          THE COURT:  Mr. Timoshenko doesn't dispute the fact

12  that he incurred a debt, bought something that he didn't pay

13  for.  Doesn't dispute that, right?

14          MR. LITVAK:  Correct, well --

15          THE COURT:  The debt was just not paid at all.  It

16  was outstanding.  So Mr. Timoshenko receives a letter telling

17  him, Mr. Timoshenko you bought whatever it is you bought in

18  effect, you incurred a debt of 2,000 some odd dollars, and you

19  haven't paid for it.  And so the letter said Mr. Timoshenko,

20  as of the date of this letter you owe, your balance is

21  $2,435.48.  That balance he doesn't dispute, $2,435.48, he

22  doesn't dispute that?

23          MR. LITVAK:  At this time --

24          THE COURT:  Excuse me, would you please listen to

25  the question and answer it.

PROCEEDINGS

1          MR. LITVAK:  Sure.

2          THE COURT:  Does he dispute the fact that his

3    balance was $2,435.48?  He doesn't dispute that.

4          MR. LITVAK:  I never discussed with him whether he

5    disputed that balance or not.

6          THE COURT:  Okay.  Excuse me.  He received this

7    letter and says because of the interest or fees that may vary

8    from day to day, the amount due on the day you pay me may be

9    greater; hence, if you pay the amount shown above an

10   adjustment may be necessary after we receive your check.  In

11   which event, we will inform you before the depositing the

12   check for collection.  And for further information please

13   write or call Mr. Brickman and he leaves a number.

14          That notice was precisely the notice that was

15   involved in Avila, almost word for word.  Correct?  Yes, yes?

16          MR. LITVAK:  It was very similar.

17          THE COURT:  So as I understand it, Mr. Timoshenko

18   when he received this letter was terribly confused.  He was

19   mislead.  He was deceived.

20          Let me read your complaint.  It's a remarkable

21   complaint.  It's a complaint of 60 paragraphs, which involves

22   a claim of a collection letter that you owe $2,435, that you

23   don't dispute, but the complaint is, you repeat the July 11

24   letter stated, in part, as of this date your balance is and

25   you repeat that in paragraph ten of your complaint.  A debt

PROCEEDINGS

1   collector has the obligation not just to convey the amount of

2   the debt, but to convey such clearly.

3           What is it that was not conveyed clearly?

4           MR. LITVAK:  By saying that it may increase you

5   don't let the debtor know how much it will increase, at what

6   interest rate.

7           Let's say he gets that letter, let's say Timoshenko

8   gets that letter, and Timoshenko --

9           THE COURT:  Excuse me.  I take it Mr. Timoshenko got

10  that letter and he felt confused and harassed, mislead, I

11  don't know how much I really owe, I don't know what the

12  interest rate is, I don't know what the fees are.  I don't

13  know at all anything about it.  I better go and see a lawyer.

14          MR. LITVAK:  Correct.

15          THE COURT:  Is that what happened?  He came to you

16  and said, Mr. Litvak, I received a letter from a collection

17  agency, I don't understand this at all?  But the letter said

18  if you have any questions call Mr. Brickman at 516 and so on

19  and so forth.  But he didn't do that.  He said, gee, this

20  letter is terribly confusing.  I bought something, I haven't

21  paid for it, I owe money, and I get this letter telling me

22  that I owe $2,425, which is correct.  And it also says because

23  of the interest or fees that may vary from day to day, the

24  amount due on the day you pay may be greater.  If you pay the

25  amount shown above, an adjustment may be necessary after we

1  receive your check.  In which event, we will inform you before

2  depositing the check.

3        That's specific language, exact language in Avila.

4  And the Court of Appeals in Avila says that language is

5  perfectly fine, it's not a violation of 6092(E), it's not a

6  violation of 6092(G).  And you were told that specifically,

7  Avila is just as plain as can be.

8        But you submitted a complaint and you say a debt

9  collection has the obligation not just to convey the amount of

10  the debt, but to convey such clearly.  6092 prohibits a debt

11  collector from using any false, deceptive or misleading

12  representation or means in connection with the collection of

13  any debt.

14        Is there anything in that letter that is false,

15  deceptive or misleading?

16        MR. LITVAK:  Correct, your Honor, the amount of

17  debt.  Because in my reasoning --

18        THE COURT:  Excuse me, Mr. Litvak, what is there in

19  your collection letter in that paragraph that is false or

20  misleading?

21        MR. LITVAK:  That's what I'm trying to explain, your

22  Honor.  If you give me an opportunity to speak, I would

23  appreciate it.  As I would --

24        THE COURT:  If you would be responsive to the

25  questions I ask, I would be very appreciative as well,

1    Mr. Litvak.

2             MR. LITVAK:  Your Honor, I've been trying to be

3    responsive but I've been cut off without completely finishing

4    my answer.

5             As I was saying before, I would like to begin by

6    saying that the standard is an objective standard, not a

7    subjective standard.  It's irrelevant --

8             THE COURT:  Mr. Litvak, don't teach me about what

9    the standard is.  I know very well of what the least

10   sophisticated consumer is all about.  I know very well about

11   what the objective is.

12            But I'm asking you to tell me, Mr. Litvak, what is

13   there about the collection letter which is false, anything?

14            MR. LITVAK:  Well, it's misleading as to the amount

15   of debt.  Because looking at Balke, by just saying that the

16   balance may increase you don't give enough information to the

17   debtor to advise the debtor how much he needs to pay.

18            You can have the situation where the debtor, let's

19   say pays the balance today thinking that he completely paid

20   the balance in full.  A year later he gets another collection

21   letter for another thousand dollars.  The debtor is thinking,

22   what happened, I paid this balance a year ago, why am I

23   getting this now for another thousand dollars?  So that's an

24   issue that could happen without clarifying or providing enough

25   information to the debtor.

1        THE COURT: It's not a question of what could

2 happen. I'm asking you -- let me rephrase this.

3        The purpose of the Fair Debt Collection Practices

4 Act is to avoid collection debt practices which would harass,

5 mislead, abuse, debtors, correct?

6        MR. LITVAK: Yes.

7        THE COURT: What is there about this letter which

8 harassed, misled, abused, coerced or any other way effected,

9 injured in some emotional or practical way Mr. Timoshenko?

10 Mr. Timoshenko must have been confused. He must have reacted

11 badly to this letter when he got it. What caused

12 Mr. Timoshenko to come to your office and say, this letter,

13 this letter is very upsetting to me. It's confusing to me.

14 And I'm not going to call Mr. Brickman or whoever it is, but

15 I'm going to go to my lawyer and have him file a complaint and

16 sue because I'm being misled.

17        MR. LITVAK: Again, your Honor,the letter itself is

18 misleading as to the balance. It doesn't provide enough

19 information to the debtor.

20        THE COURT: Avila didn't think so. It's the exact

21 same language that the Court of Appeals approved in Avila.

22 They didn't say it's misleading.

23        MR. LITVAK: I agree. That's why we're relying on

24 the Court in Balke, which in fact, which actually discussed

25 Avila and Carlin. And that Court there stated that that's not

PROCEEDINGS

1    enough, you got to give more than that.  So that's why we're

2    relying on Balke this was a plausible claim, your Honor.

3           You cannot say -- the Court can disagree with that

4    reasoning, but you cannot say that subjectively this was

5    brought in bad faith without color.  The only thing I was

6    trying to do, as I stated in my order to show cause and in the

7    to reply is to extend or modify the Second Circuit precedent,

8    something that has been done many, many times before by other

9    attorneys and has never been found to be sanctionable.  Judge

10   Cogan --

11          THE COURT:  Mr. Litvak, don't ever tell me what some

12   other judge did.  That's not very persuasive for me.  I'm not

13   interested in what some other judge did.  I'm interested in

14   what you did and what is before me in this case.

15          As I understand it, Mr. Timoshenko came to you and

16   said to you, I've received a collection letter, I'm mislead, I

17   don't understand it, I'm upset, I feel harassed.  What are

18   they telling me?  They tell me I owe $2,435, and when I send

19   my check if somehow or other there was interest or some other

20   fee I won't deposit the check, I'll let you know what it is

21   that I think I need more of.

22          What am I mislead about?  What am I mislead about?

23          MR. LITVAK:  The amount of the balance due.

24          THE COURT:  Thank you very much, Mr. Litvak.

25          MR. ARLEO:  May I bring up one point that clearly

PROCEEDINGS

1  demonstrated his subjective bad faith.  He just told you that

2  based upon that letter his client could pay that amount and

3  then a year later come back and be all confused as to why it

4  wasn't resolved when the letter told him that exact

5  advisement.

6          It's clearly subjective, your Honor.  I believe the

7  Court has every basis to react.

8          THE COURT:  Anything else you want to say to me,

9  Mr. Litvak?

10         MR. LITVAK:  Nothing else, your Honor.

11         THE COURT:  You'll be advised.  Anything further?

12         MR. ARLEO:  No.

13         THE COURT:  How much time did you spend, so on and

14 so forth, with respect to your opposition to this complaint?

15         MR. ARLEO:  To the complaint or to the order to show

16 cause?

17         THE COURT:  In general.

18         MR. ARLEO:  In all truth and candor to the Court, I

19 charge my clients a flat fee.  I'll tell you why you do that.

20         THE COURT:  Don't tell me why, just give me a

21 number.

22         MR. ARLEO:  I believe I charged $5,000 for the case.

23         THE COURT:  $5,000.

24         MR. ARLEO:  Or 35, one or the other.

25         THE COURT:  So a collector is incurring the fee, an

PROCEEDINGS

1   attorneys fee of over $5,000, to collect the debt of $2,435

2   and change.  Right?  Because the debtor is confused and

3   mislead by false, misleading, deceptive information, which the

4   United States Court of Appeals for the Second Circuit says is

5   perfectly fine, there is nothing wrong with it.

6             MR. LITVAK:  Your Honor, again Balke came up --

7             THE COURT:  I don't want to know anything about

8   Balke.  I'm familiar with Balke.  We made reference to Balke

9   in our decision, didn't we?  If Balke was wrongfully decided,

10  then there should have been an appeal by the collecting agency

11  and said there is something wrong with your decision judge,

12  because what I did is essentially Avila.  But apparently that

13  hasn't been done or, if it is upon appeal I don't know.

14            But the point of the matter is, Mr. Litvak, I don't

15  think it's for you to ignore the Court of Appeals in the

16  belief that if I ignore the Court of Appeals in a case which

17  is precisely on point with the Court of Appeals I may

18  encourage the Court of Appeals to change the law.  That's what

19  you're telling me.

20            MR. LITVAK:  That's what has been done on many

21  occasions before.  I wasn't ignoring it, your Honor.  I was

22  trying to modify or extend an existing precedent.  That has

23  been done on many, many occasions.  It has never been found to

24  be sanctionable.  That's what motion practice is about, to

25  debate the law.

1        THE COURT:  What else is there that you want to

2   teach me about motion practice and the obligation of the

3   lawyer with respect to following very clear, undistinguished

4   precedent of the Court of Appeal?  What else do you want to

5   tell me?  What else do you want to teach me about motion

6   practice or the practice of law?

7        MR. LITVAK:  I'm not trying to teach you.  I'm

8   trying to explain my logical reasoning in bringing this

9   complaint.

10        THE COURT:  Your logical reasoning was you were

11   going to try to extend the holding in Avila.  Is that the

12   idea?

13        MR. LITVAK:  Of course, yes.

14        THE COURT:  Is that what Balke did?

15        MR. LITVAK:  I believe at that time it was trying to

16   do that.  I may have been wrong on that issue.  But it doesn't

17   rise to the level of subjective bad faith, not at all.

18        THE COURT:  Did you make that known to Mr. Arleo?

19   You're absolutely right, Mr. Arleo, what it is that I'm doing

20   is clearly contrary to Second Circuit law, but I'm going to

21   continue to persist because it may be that I'll get the Second

22   Circuit to change the law, or get Judge Glasser to say the

23   Second Circuit was wrong.  This is perfectly in accord with

24   the Fair Debt Collection Practices.

25        MR. LITVAK:  In that e-mail I believe I responded, I

1  replied with the holding in Carlin and Balke, if I remember

2  correctly.  I was pointing the opposing counsel to those

3  decisions.  After that, we had never really communicated as to

4  that issue again.  But I did convey to my opposing counsel

5  that I'm relying on Carlin and on Balke in bringing -- and I

6  relied on Carlin and Balke to bring this complaint.

7          THE COURT:  I just want to make sure that I still

8  haven't gotten an answer to it, but I would like to know, when

9  Mr. Timoshenko got this letter he was confused and felt

10 mislead.  And when he got this letter telling him that you owe

11 $2,435, it may be more, and when you send me a check and it

12 isn't enough, we'll let you know.  We won't deposit the check

13 until we let you know.

14          He read that, he was confused, he said he better

15 come and visit a lawyer, is that what happened?

16          MR. LITVAK:  My --

17          THE COURT:  Is that the way it happened?

18 Mr. Timoshenko came to you and said I got this letter telling

19 me I owe money, I don't understand it, I'm terribly confused

20 and being mislead?

21          MR. LITVAK:  That's not the standard, whether he was

22 confused or not.  It's an objective standard.  They send this

23 letter out to hundreds, if not thousands, of debtors.  He's

24 not the only person who got this letter.

25          THE COURT:  Do you want to tell me that I'm

1  interfering with your answer, that I'm cutting you short?  I

2  still haven't gotten an answer to what seems to me to be a

3  very simple question.  But it's obvious that you really don't

4  want to answer that question, do you?  Because that's not the

5  way it happened.

6          MR. LITVAK:  Well, because when somebody comes to me

7  it's not the issue whether that person is confused or mislead.

8  It's an objective standard based on the letter.

9          THE COURT:  All I'm asking you, if you wish to

10  answer it or stand on some attorney-client privilege, which I

11  don't think is applicable, but whatever it is, if you don't

12  want to answer it you don't have to, but the simple question

13  that I'm asking you is, did Mr. Timoshenko come to you and say

14  I received a letter, I'm upset, I'm misled, I don't understand

15  what I owe.  I came to you to tell me what this is all about.

16  And you bring a lawsuit saying that there is a violation.

17          Did he come to you telling you that I don't

18  understand this letter, I'm misled, I'm confused?

19          MR. LITVAK:  It's not something I would like to

20  discuss, your Honor.  I think it's irrelevant, completely,

21  what Mr. Timoshenko said to me or not.

22          THE COURT:  Mr. Litvak, I think I can probably

23  compel you to answer that question at the risk of being

24  contemptuous; but if you don't want to answer it, don't.

25          Don't give me these answers about objective

Rivka Teich CSR, RPR, RMR
Official Court Reporter

PROCEEDINGS

1  standards and all the rest of it.  I'm not asking you about

2  that.  I'm asking you a very simple question, which I can't

3  get an answer to.  Thank you very much.

4          MR. LITVAK:  Thank you.

5          (Whereupon, the proceedings concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25